Thank you, Your Honor. May it please the Court. Michael Blanton on behalf of plaintiffs and appellants in this matter. I'd like to start with the District Court's error in denying plaintiffs' leave to amend their petition for their complaint in order to state a claim of negligent contracting against defendant FedEx. The standard that applies to review of that order is abuse of discretion, and plaintiffs contend that the District Court abused its discretion in several respects. What's the last case where we reversed the District Court for this particular kind of discretionary ruling? I can't say what the absolute last case was. What's any case where we reversed? In my 20-some years on the Court, have we had one? I know the Court has recognized that the standard, and it's the standard of good cause under Rule 16B, that it's appropriate. I know the standard. I'm not aware of a case that's directly on all fours with this situation. Not all fours, just where the denial of an untimely motion to amend was reversed for an abuse of discretion. I don't know off the top of my head, Your Honor. I don't either. This Court has recognized that a court should consider whether a motion to amend that's passed the deadline is based upon newly discovered facts. In numerous cases in this circuit, not of this Court, but in this circuit and in other circuits, have recognized that good cause is established under Rule 16B-4 when a motion to amend is based upon information that's acquired in the discovery process after the deadline for amendment has lapsed. And that's precisely what happened in this case. I think it's important to note that from the very beginning, the parties anticipated that the discovery process would be a lengthy process. The initial joint Rule 26 report indicated that the parties anticipated discovery would take 18 months. When the Court first enlarged the deadlines under the scheduling order in October of 2010, it indicated that it was doing so because there had been delays in the discovery process. And it also indicated that there was good cause. And I should note, the Court, through the course of these proceedings, granted multiple motions, joint motions, to extend the scheduling deadlines. In one instance, it expressly stated that there was good cause for doing so. But implicitly, I think the other orders, the Court necessarily found good cause because if it was extending the Rule 16 deadlines, it must have believed there was good cause to do so. It wasn't until plaintiff filed their motion seeking leave to amend that the Court, for the first time... But the amended claim would have tremendously extended the discovery requirement, just thinking about it. I don't believe that's true, Your Honor. We would now have to fully litigate whether Mickey's, is that the name, was really such a bad actor that doing business with its successor was negligent. And then you'd have to prove it was known. I mean, I can understand if I'm the magistrate judge or the district judge, to have that issue opened up with all of the new discovery required after four extensions. Where's the abuse of discretion? But I should note, it seems one-sided if the Court grants extensions repeatedly to allow defendants to have evidence to file summary judgment motions. But then when the evidence is in favor of plaintiffs, plaintiffs cannot obtain any relief with respect to the evidence that's been obtained in the process after numerous extensions granted on joint motions. Now, the extensions were of the time to do discovery, right? Of time to do discovery, well, yes. Of time to do discovery and of summary judgment deadlines. And this Court actually had multiple times extended the summary judgment deadline, finally pushing it out to late December of 2011. But the April deadline to amend pleadings, that was never changed, right? It was not, and it was not requested that it be changed earlier. It wasn't that we had asked and been denied. And then another little point of fact, now, we have said in the Sherman case, and I think that is the closest case to this case, generally. I realize the district court did something differently there, but play along with me for a second. I do think the Sherman is one of the closest cases. It says undue delay is sufficient to deny a motion to amend pleadings, period. Doesn't that kill you? Because I don't see you really attacking undue delay. I think in Sherman and in the other cases by the circuit, the standard is obviously due diligence. And I think the reason for the delay plays into diligence. I think that is precisely what the many district court cases in which courts have recognized that a party was seeking leave to amend after evidence was obtained in discovery after the deadline for amending had already passed, that the courts were essentially recognizing there was due diligence when you didn't have the information available to you and weren't able to obtain the information until after the deadline had passed. And I think that is exactly what happened in this circumstance. It wasn't that we weren't trying to get the evidence, but there were delays in the discovery process. And again, all of the parties anticipated from the very beginning that this would be a lengthy discovery process. I'd like to briefly shift over to the non- And what witness or witnesses caused the need for the great delay? My understanding, and I was not trial counsel, my understanding was it was difficulty in scheduling out-of-state depositions. Well, I know, but was it lawyer difficulty or witness difficulty? What witness made it so difficult? I do not know firsthand, Your Honor. I know that when the court spoke about the discovery delays, it did not place blame. If you don't know the answer, how are we supposed to weigh the diligence issue? I believe the language of the district court's orders certainly does not place blame for discovery delays upon plaintiffs and rather treats them just as delays in scheduling that were occurring. I don't think the court was attributing the fault to anybody. That's irrelevant. I mean, if it was the lawyers that didn't want to go to Florida in midsummer, that's different than if there's a real extreme difficulty, like an international pilot who's around the world most of the time. If we're talking diligence, you have to get into those details, don't you? I think we can read from the court's orders how the court treated the delays, and it had treated them in a neutral fashion. That's the best I can say on that, Your Honor. With respect to nondelegable duty, the district court granted summary judgment against plaintiffs. The court recognized that nondelegable duty could make a party negligent or responsible for the negligence of their contractor if the negligence involved a nondelegable duty, and the court assumed that under Section 390.11 of the Federal Motor Carrier Safety Regulations that a nondelegable duty could arise, but the court found that the regulations did not apply in this case. Is that an issue of federal law or state law? I believe that's an issue of federal law, Your Honor. The interpretation of the federal regulations? Well, wait a minute. The nondelegable duty, I thought, if I read the Eck case, which addressed the question of the impact of the federal regulations on a state law question. Why is this a federal issue? I believe in this case because the court was interpreting federal regulations. Well, counsel, we have the Huggins case. I don't know whether you're familiar with the Huggins case. It's a FedEx case from 10, and in that case, we treat it like that issue is almost entirely a state law question to determine the, you don't use the term agency, but I would call it sort of agency relationship or what's really going on in the case. Frankly, I don't think it impacts the error in the court's decision, whether it was a state law question or a federal law question, Your Honor. I think the court misinterpreted the regs, whether it was misinterpreting the regs under state law. Well, if it's state law, why isn't Eck controlling? I don't know because the court didn't rely upon any state law cases. What court? The district court. Well, isn't this an issue of law or is it an issue of fact? I'm sorry, Your Honor. I was answering your question about state law. What difference does it matter what the state court relied on if it's an issue of law and you're arguing to the appellate court? I don't understand the argument. I apparently didn't speak clearly, Your Honor. I was saying that if the interpretation of the regulations is an issue of state law, that the district court was not relying upon any state authorities. No, if the federal regulations create a non-delegable duty under state law. Eck said no. But the court reached that conclusion based upon its interpretation of the federal regulations. And for what it's worth, the district court cited other federal cases which had interpreted those same regulations, and I believe the court misinterpreted those regulations. The court held that Well, maybe the state court got it wrong, whether it's federal or state law. I'm not following with the state court, Your Honor. There's no state court that's addressed this question or that the district court was relying upon. I believe the district court was relying upon federal cases. The district court relied upon Alibali v. Rite Aid. No, you're right, you're right, because Eck is a Ninth Circuit case, but there's a case Kime has cited. Well, that's Nebraska law generally regarding non-delegable duty, but the regulations, and again, the basis for the court's ruling was its conclusion that FedEx was acting as a shipper, not a motor carrier. And to reach that conclusion, the court relied upon these federal decisions, which I've cited, and I believe the court erred in relying upon those decisions because in those decisions, you were dealing with an entity that was not in the business of transporting goods. It was in a different business. In Alibali, you had a drugstore chain that was shipping its own goods by contract with a third party. In Caballero, you had an agricultural company that was shipping its own goods by contract with a third party. Neither of those companies was in the business of transporting goods. Federal Express is in the business of transporting goods for other parties. If you look at the definition of motor carrier, a motor carrier is defined as a person engaged in the transportation of goods or passengers for compensation. That's Federal Express's business model. I think it was improper to treat Federal Express as a shipper. A shipper is generally defined as a person who sends or receives property. If you look at the cases, the distinction tends to be that a shipper is somebody who they do ship their own goods, but it's secondary to another line of business. Counsel, to start drawing the line, suppose it's Christmas time and FedEx is not doing a good job of delivering packages. Suppose they decide to ship their corporate checks, their own personal corporate checks on FedEx. They decide to ship those on another carrier. In that case, are they the motor carrier or is that different? That's an excellent example, Your Honor. In that instance, if Federal Express was shipping its own checks for its own internal business purpose, I'd be willing to concede that that is acting as a shipper because it's not shipping other person's goods for compensation in that instance. I think that is the dividing line. I think when we cite numerous cases in our briefs where courts have recognized again and again that couriers are generally treated as motor carriers, not shippers, because it's their very business to ship goods. I should also point out that it makes no difference whether the courier is using a third-party agent because the definition of motor carrier specifically includes a motor carrier's agents. In the definition of non-delegable duty, does it use the word V or A? I know you both spend a good bit of time briefing that. I'm glancing at it right now, Your Honor. Thank you. You're ahead of me. I'm looking forward to it. It uses both words V and A. It refers to the motor carrier, though. It does use V with respect to motor carrier. Is it a long sentence or a short sentence you just looked at? I can read it to you. Yeah, that's what I was going to say. Short read it and not don't. It's two sentences. Whenever in Part 325 of Subchapter A or in this subchapter a duty is prescribed for a driver or a prohibition is imposed upon a driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition. If the motor carrier is a driver, the driver shall likewise be bound. It mostly has these, though, right? It does, Your Honor. Yes, thank you. Again, I believe FedEx was the motor carrier in this case. I'd like to just briefly try to address the negligent entrustment to hopefully save a little time for rebuttal. To me, the primary error on negligent entrustment in the summary judgment there was that the court looked at it solely in terms of the federal regulations and did not recognize that more generally under Nebraska common law there can be a claim for negligent entrustment even when the chattel is provided through a third party. So, in other words, it makes no difference that FedEx was having Belichcock drive its truck through the intermediary. Don't you still have to be negligent? You do, but again, that wasn't the basis of the court's denying the claim of negligent entrustment here. The court found that negligent entrustment could not apply because FedEx was not a motor carrier. I disagree with that conclusion. I'm simply pointing out that completely aside from what I view as that erroneous conclusion, there's also a common law basis for liability and I believe the court didn't give sufficient weight to that. Well, I don't understand the theory. What's the basis for the liability? That Belichcock was not properly trained or equipped to be driving this truck and that FedEx knew or should have known that fact, Your Honor. What's the evidence that they should have known? They were aware of the abysmal safety record. Well, you say that. That's actually in the facts that we... Well, that gets back to the issue of whether we could rely upon that evidence or not. You'd have had to prove it. So they're in the bottom 20%. Maybe they just had a bad run of accidents that weren't their fault. That's all. But what's the evidence of should have known? Where do I look in the summary judgment record assuming you've got a kernel of... Part of the problem with the summary judgment record, Your Honor, is that wasn't the basis of the court's ruling so the court didn't focus on... No, wait a minute. The court made the ruling after the record was presented. Now you're on a different issue. You can go back to your record and say if the court had applied the right standard, it would have seen this evidence. I'm saying what was the evidence? I don't have that at my fingertips, Your Honor. Again, I have the appellate record that you have, which is the evidence that was focused upon given what the district court was keyed in on. Wait, wait. You're saying the record on appeal is not the summary judgment record before the district court? I've never heard of such a thing. No. I'm saying that the summary judgment, the focus of the district court... Focus doesn't matter. I'm asking you what was the showing by the plaintiffs to defeat summary judgment on your approach to the negligent entrustment? With all due respect, Your Honor, I think focus does matter because I generally respond to what the district court judges... No, you present a record. I'm saying what record, evidentiary record... I believe the record shows that Mr. Velichkov had little to no training. I believe it shows that FedEx was aware of the abysmal training record of Mickey's. There may be other facts I would have tried to find out. Okay, just tell me the witness that I should go read to verify that. I would have to look, and unfortunately I'm out of rebuttal time. Now, if the court would allow me a minute, I would be happy to go back and look and come back on rebuttal and try to... Very good. If there are no further questions, I will sit down now. Thank you. Gross? Good morning, Judge Little. May it please the court. Judge By and Judge Benton. I'm Joe Gross, and I'm here as counsel for FedEx National LTL. And during the course of the argument, I'd like to just refer to them as FedEx. I was also trial counsel below, and I believe I can answer some of the questions posed by Judge Logan, at least hopefully I can. First, let me go to the motion to amend very briefly. It is the plaintiff's argument on appeal that this motion to amend was based on newly discovered evidence, and it's my argument that is 100% fabricated. I was trial counsel below, and I can refer the court to appendix page 186 of the plaintiff's appendix appropriately under the heading that the plaintiff's motion was. Plaintiff's cause is premised on their desire to accommodate defendant FedEx National on the motion to amend. I can only speak for myself, but I wish you'd get to the merits of the issue and not the discretionary procedural ruling. If I understand your argument. The merits of the tort theories that have been argued. Okay. In other words, Your Honor, just don't bother arguing the motion to amend. I'm only speaking for myself. I'm just saying what you want to talk about and what opposing counsel want to talk about is not what's of interest to me in oral argument. Go ahead with your argument. Okay. Thank you, Your Honor. Very briefly, the court properly exercised its discretion in the decision to deny the motion to amend. The motion to amend did, as Judge Loken pointed out, drastically change the theory. And the district court heard this argument four different times, twice to Judge Gossett and twice to the district court judges battalion and Judge Girard and all four judges. And it's 17 months late, right? Yes, Your Honor. And during that 17 months, how many times did you jointly agree to extend discovery? Three or four? There were four motions, Your Honor. Three of them were for the extension of plaintiff's expert witness designations. The last discovery effort was conducted on June 29, 2011. The motion to amend was filed  During that period of time, there was no discovery conducted by the plaintiffs. During that time, there were three motions to amend the Rule 16 scheduling order, and at no time during those three amended scheduling orders did the plaintiffs ever request an opportunity to amend the pleadings. So moving on then to the negligent entrustment and the non-delegable duty, I find those two issues linked very closely because it does turn on whether the federal regulations apply. And as Judge Girard concluded, and I think concluded with an analysis that I cannot improve upon in oral argument, that the federal regulations do not apply to FedEx under this circumstance. It was a motor carrier, but was not the motor carrier exercising its operating authority at this time. Counsel, are you familiar with our Huggins case, the 2010 case? No, sir. Oh, shoot. Because there we acted like it's whether there's a FedEx sign on the back of the truck. No, it's Missouri law. I understand that. Forget about that. I went to school at St. Louis University. Oh, good. That's the right state. Even so, but there, we go by whether there's the FedEx sign on the truck on the back. We go by how much the route is controlled. You know, all that sort of common law, I'd call it agency stuff. Yes, sir. And we cite the restatement of agency, this court is what I mean by the we, several times and act like this non-delegable duty goes by that test. Now, I realize that this wasn't, this isn't in the district court's order at all. I don't think they used the word agency, and I don't think either of you briefed the word agency. That's correct. Do you have any views about that issue, though, in Vive of the Huggins case? I don't, Your Honor, because I don't understand the case. That's fine. Proceed with your argument. Thank you, Your Honor. The point is that if the federal regulations do not apply in Judge Girard's analysis, and they don't, then there would be no duty imposed upon them. Well, let's just say they did apply. Then what's the... Well, I think if they... Now do we go to state law? I don't understand. What's the interplay between federal and state law if the regs apply? And I don't know the answer to that, but my instinct is that the state is not necessarily bound by the federal regulation, and it does not necessarily create a duty either to... To my knowledge, no, Your Honor. And if there is no duty to make... If there is no duty under the regulations... Excuse me. If the regulations don't apply, then there is no duty to inquire about the qualifications of a driver, which dispatches the entire negligent entrustment, because the court in that analysis said there could be no material fact dispute if you can't impose a duty upon FedEx to inquire or know or should have known about the qualifications of an employee of an independent contractor. So that's the negligent entrustment issue, the non-delicable duty issue, and the only other issue that the plaintiffs briefed was the summary judgment. And there are two aspects to that argument. The first aspect of the argument is that the court did not properly apply the standard of law. I think that the court did view the facts in the light most favorable to the non-moving party. But the plaintiffs pick a fight with, or quarrel perhaps, with three facts that Judge Girard discusses. One has to do with the control of the route. One has to do with whether FedEx required labor to be performed by the driver. And the last is whether they were required to report. And in each of those instances, Judge Girard analyzed the facts, said that at most there was a disagreement over the significance of the facts and not the facts themselves. No material dispute here. Specifically, there was no labor required by merely asking a driver to check his paperwork. There was no control over this driver to the extent that they asked that it minimize the amount of time in high-crime areas, not drive to their own residence, and to the extent possible, park in a secure area. And that it was not a control issue or reporting issue by asking a driver to report an accident. The other aspect of their summary judgment argument deals with the argument that the district court completely ignored facts that they included in their statement of facts in filing number 127. And in this regard, I would refer the panel to addendum page 11 at the top paragraph where Judge Girard specifically goes through every one of those alleged disregarded facts. So that's just not a correct statement either. Doesn't it seem odd that FedEx, I think it's the number one carrier in the world of something, doesn't it seem odd that they can beat all their duties under this Federal Motor Carrier Act by doing a lot of subcontracting? I'm not sure that they do a lot of subcontracting. I think their business model, Judge Benton, is to have a certain number of employees and to the extent that they have overflow, they hire independent contractors, which is this power-owning notion that I have briefed in the appellate's brief. But they can effectively beat all the regulations by simply saying they don't apply to us, they apply to these other people we've contracted with, right? I'm not sure that they can effectively defeat all the regulations. I think you're then talking about characterizing the business model as more of a broker rather than a model that FedEx has. If there are no other questions, that's the judgment. I'm still confused by the argument because as I read the district court's opinion, the court first concluded that operating a loaded tractor-trailer is not a peculiar risk creating a non-delegable duty under Nebraska law. That, Your Honor, is correct. That's the kind of case that Judge Girard also wrote as the district court. But then the court says, assuming the motor carrier regs create such a duty, they don't apply. So that assuming... Everybody here this morning is assuming that the creation of the duty, assuming the motor carrier regs create that duty under Nebraska law. But you're giving away the district court's primary argument, aren't you? A theory, legal conclusion. I hope I'm not. Well, if Nebraska law says operating an overloaded tractor-trailer does not create a non-delegable duty, why do we care about the motor carrier regs? Respectfully, Judge Lueken, I think what that Kine case dealt with is obviously nothing to do with the federal motor carrier regs. I don't care about the Kine case. I care about the legal principle that the district court was applying. And I think that was what I'm trying to say, that the legal principle that is borrowed from Kine is if there was a hazardous conduct or activity, then that's a different circumstance. And in some state law, hauling logs, for example, and that's the Eck case that you referred to, that can or cannot constitute an ultra-hazardous activity. And then you don't have a non-delegable duty. And in the Eck case, the court said the failure of these brakes is an accepted risk. And so therefore, it is not an exception to the general rule that an independent contractor... So we have a less dangerous, inherently dangerous haul here than overloaded log carriers. So what's the theory under Nebraska law that the general common law principle doesn't apply? If the federal regulations don't create a private right of action, then where... I don't understand the plaintiff's theory, but it seems to me you're giving away half of the district court's analysis. It doesn't matter. Even if the motor carrier regs apply, it doesn't matter as a matter of Nebraska law. Wasn't that what the court was saying? Well, I do agree with that, Your Honor, and maybe I'm slow to catch up with you, but I do agree with you. The contrary assumption has been driving both sides of the oral argument. That's where I'm... Well, I guess I'm reacting to the plaintiff's issues on appeal. And as the court recognized, that issue wasn't briefed. And so I guess I'm not consumed with an issue that wasn't raised by the plaintiff. The Huggins case says that there are prior cases holding carriers liable under the FMCSR, but for what it's worth, I'll tell you the whole story. It also says that the governing agency, now the Department of Transportation, clarifies that that's not supposed to be the case, says the Huggins case at page 861. So, I thank you. Everything I know about that. That's about everything I know about this. If the court has no further questions, thank you for your time this morning. All right, very good. Now the case has been thoroughly briefed and argued, and we'll take it under advisement. Thank you, counsel.